United States District Court
District of Massachusetts

| | |
|---|---|
| Luis Humberto Luna Banegas, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 25-13161-NMG |
| Joseph D. McDonald, Jr., et al., ) | |
| ) | |
| Respondents. ) | |

MEMORANDUM & ORDER

GORTON, J.

In his petition for writ of habeas corpus (Docket No. 1) petitioner Luis Humberto Luna Banegas ("petitioner" or "Banegas") contends that Joseph D. McDonald, Jr. and other named respondents ("respondents") have violated his statutory and due process rights by refusing to grant him a bond hearing. Respondent asserts that petitioner is detained pursuant to 8 U.S.C. §1225(b)(1) ("§1225(b)"), while petitioner insists that he is eligible for such a hearing under 8 U.S.C. §1226(a) ("§1226(a)"). For the reasons that follow, the petition will be denied.

I. **Background**

On August 18, 2024, petitioner entered the United States by crossing the southern border at an unauthorized location. Later

that same day, United States Customs and Border Patrol ("CBP") agents encountered petitioner near Rio Grande City, Texas, along the southern border. CBP arrested and detained petitioner pursuant to §1225(b)(1) and issued to him a Notice and Order of Expedited Removal. Several days later, while being processed for Expedited Removal, petitioner expressed a fear of persecution or torture if he were to be returned to Honduras.

Thereafter, United States Citizenship and Immigration Services ("USCIS") found that petitioner had presented a credible fear of persecution or torture and issued to him a Notice to Appear, which informed him that he was inadmissible under 8 U.S.C. §1182. On September 11, 2024, petitioner was released from custody on humanitarian parole under 8 U.S.C. §1182(d)(5) but remained subject to monitoring as an alternative to detention. On September 23, 2024, USCIS filed the Notice to Appear in immigration court which automatically vacated the Notice and Order of Expedited Removal and placed petitioner into full removal proceedings under 8 U.S.C. §1229(a).

Petitioner violated his monitoring conditions on at least ten different occasions over the course of the next year. On October 15, 2025, during a scheduled check-in at the Immigration and Customs Enforcement ("ICE") office in Burlington, Massachusetts, agents terminated petitioner's parole due to his

repeated monitoring violations and then re-detained him pursuant to §1225(b)(1).

## II. Jurisdiction

The government argues that this Court does not have jurisdiction because, in his petition, petitioner does not name his immediate custodian. He names Joseph D. McDonald, Jr., the Sheriff of Plymouth County and Facility Head of the Plymouth County Correctional Center but not Antone Moniz, the Superintendent of the Plymouth County Correctional Center, where he is currently incarcerated.

In habeas cases, the immediate custodian and proper respondent is the individual with "day-to-day" control over the imprisoned individual. Vasquez v. Reno, 233 F.3d 688, 691, 696 (1st Cir. 2000). The so-called immediate custodian rule prevents petitioner from naming the Attorney General or some other remote supervisory official and from filing his petition outside the district of confinement. Rumsfeld v. Padilla, 542 U.S. 426, 430 (2004). This rule serves the important purpose of preventing forum shopping by habeas petitioners. Id.

For the purpose of determining jurisdiction in this case, it appears that the naming of Sheriff McDonald does satisfy the immediate custodian rule because (1) other courts have found Sheriff McDonald to be the actual custodian of the Plymouth County Correctional Facility, see Anim v. McDonald, No. 11-

10017-JLT, 2011 U.S. Dist. LEXIS 2158, at *1-2 (D. Mass. Jan. 10, 2011) and the government has not challenged jurisdiction in those cases in which he has been the named respondent; (2) Sheriff McDonald does have day-to-day control over the facility based on the description on its website, and (3) petitioner does not appear to this Court to be forum shopping.

Thus, the Court concludes it has jurisdiction in this case and will proceed to the merits of the petition.

### III. Legal Standard

Section 1225 applies to "applicants for admission," who are defined as noncitizens "present in the United States who [have] not been admitted." §1225(a)(1). Section 1225(b)(1) "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting §1225(b)(1)). Individuals subject to §1225(b)(1) are normally placed into Expedited Removal, without further hearing or review, but those who indicate an intention to apply for asylum or express a fear of persecution are referred for an asylum interview. If the interviewer finds a credible fear of persecution, the alien is detained for further consideration of that application. §1225(b)(1)(B)(ii).

An alien detained under §1225(b) may be released only if he is paroled for significant public benefit or urgent humanitarian

reasons under §1182(d)(5)(A). Such parole is not regarded as an admission of the alien and may be terminated

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of [certain specified Department of Homeland Security] officials ..., neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.

8 C.F.R. §212.5(e)(2)(i). The Department of Homeland Security must provide written notice to the noncitizen and he or she is then restored to his or her pre-parole status. Id.

Section 1226(a) establishes a discretionary detention framework for aliens arrested and detained pending removal proceedings. Under that provision, the Attorney General may continue to detain the alien, release him on bond or release him on parole. §§1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination but non-citizens have the right to request a custody redetermination (i.e., bond) hearing before an immigration judge. See 8 C.F.R. §§1236.1(c)(8), (d)(1). This Court recently held that §1226(a), rather than §1225(b), applies to aliens who are detained while residing in this country while §1225(b) applies to those detained at the border. See, e.g., Lopez-Monteros v. Hyde, No. 25-cv-12629-NMG (D. Mass. Oct. 27, 2025).

IV. **Analysis**

   a. **Statutory Rights**

Petitioner contends that, although he was initially detained pursuant to §1225(b)(1), once he entered full removal proceedings under §1229a, the statutory authority for detention became §1226(a), thereby entitling him to a bond hearing under §1226(a). The government rejoins that petitioner was detained under §1225(b)(1) under which detention is mandatory.

The government is correct. Petitioner offers no support for his contention that the statutory authority shifted to §1226(a) and nothing in the statutory scheme indicates that an alien in §1229 proceedings is to be detained under §1226. Indeed, another session of this Court recently determined, based on indistinguishable facts, that §1225(b)(1) is the applicable statute rather than §1226(a). Rincon v. Hyde, 2025 WL 3122784, at *7 (D. Mass. Nov. 7, 2025).

To the extent petitioner argues that his parole after arrival placed him under §1226(a) rather than §1225(b), he is mistaken. The statute under which he was paroled explicitly provides that upon termination of parole, the alien is to be re-placed into the custody from which he was paroled. Martinez v. Hyde, 792 F. Supp. 3d 211, 216 (D. Mass. 2025). Thus, contrary to petitioner's assertion that there is no statutory support for DHS's theory that detention is to be restored, it is well-

- 6 -

established that the humanitarian parole statute does just that. See, e.g., Matter of Q. Li, 29 I. & N. Dec. 66, 70 (BIA 2025).

Having established that §1225(b)(1) is the applicable statute, the next question is whether petitioner has been afforded the statutory rights to which he is entitled.  It is clear that he has.  Section 1225(b)(1) provides that aliens must be detained for "further consideration of the application for asylum," which in petitioner's case will occur in his §1229 removal proceedings.  His detention is accordingly mandated under §1225(b) until the resolution of his removal proceedings and §1225(b)(1) does not provide for bond hearings. Jennings, 583 U.S. at 297.

### b. Constitutional Rights

Petitioner, relying on case law, also claims that his detention without a bond hearing violates the Due Process Clause. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021) (holding that the Due Process clause entitles a noncitizen detained pursuant to §1226(a) to a bond hearing).  That argument is, however, premised on his incorrect assertion that he is subject to §1226.  As explained above, petitioner's detention is pursuant to §1225(b) and that distinction is dispositive of his constitutional claim.

An alien's due process rights do not arise from any particular statute but rather from his entry into, or physical

- 7 -

presence in, the country. Depending on the circumstances, either §1225(b) or §1226 becomes applicable. Because §1226, by its terms, applies to aliens who are already present in the country, those aliens are entitled to due process protections. In contrast, aliens apprehended while illegally crossing the border have not entered the country and thus are not afforded the same panoply of due process rights. That is true even if the alien has remained in the country for a period of time under certain restricted conditions. The so-called "entry fiction doctrine" provides that those who are apprehended shortly after illegally entering the country are nonetheless treated as if they were stopped at the border and detained pending further consideration. DHS v. Thuraissigiam, 591 U.S. 103, 140 (2020).

This Court agrees with other judges in this district that the entry fiction doctrine makes sense in a world of uncertain borders, see Rincon, 2025 WL 3122784, at *6, and concludes that it is appropriately applicable in this and similar situations because it inures to the benefit of the petitioner. If the doctrine were not applicable, Banegas would have had to be detained at the border for weeks, months or years while USCIS considered his application. Instead, he was granted parole in this country during the pendency of his application under the statutory condition that, if he became ineligible for asylum for

whatever reason, he would revert back to the entry stage, subject to detention under §1225.

Because of the entry fiction doctrine, mandatory detention of petitioner under §1225 does not deprive him of due process or run afoul of the Constitution. Upon revocation of his humanitarian parole, petitioner was placed in custody pursuant to §1225(b)(1) just as though he had been stopped at the border and his due process rights were significantly curtailed accordingly. Thuraissigiam, 591 U.S. at 140. Those rights, whatever they may be, do not include the right to a bond hearing.

### ORDER

For the foregoing reasons, the petition for writ of habeas corpus (Docket No. 1) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
Senior United States District Judge

Dated: November 21, 2025